UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | Bankruptcy No. 17-30558 |
| Ronald G. McMartin, Jr., | Chapter 7 |
| Debtor. / | |
| David G. Velde, Trustee, | |
| Plaintiff, | |
| v. | Adversary No. 18-07023 |
| Scott Morrison, as Trustee of the Morrison Family Trust, | |
| Defendant. / | |

**MEMORANDUM AND ORDER**

**I.  INTRODUCTION**

Plaintiff David G. Velde, Chapter 7 Trustee, filed a Complaint seeking to avoid a $22,000 payment Debtor Ronald G. McMartin, Jr., made to Defendant Scott Morrison, as Trustee of the Morrison Family Trust, on an obligation owed by McM, Inc.  Doc. 1.[1]  The Trustee alleges the payment is a voidable transfer under 11 U.S.C. §§ 544 and 548 and N.D.C.C. § 13-02.1-04(1)(b), and he seeks to recover the transfer under 11 U.S.C. § 550. Specifically, he prays for judgment in the sum of $22,000 plus costs and disbursements. Id. at 4.

Morrison filed an Answer admitting that Debtor paid the sum of $22,000 to Morrison on an obligation owed by McM, Inc.  He denied liability to the bankruptcy estate for the

---

[1] All citations to the docket refer to the docket in this adversary proceeding (#18-07023) unless otherwise designated.

1

transfer.

The Court tried this case on December 12, 2018.

## II.    FINDINGS OF FACT

Beginning in 1995, Debtor and various entities in which he held an ownership interest leased land from Morrison Family Trust.  At issue in this case is a payment pursuant to a lease between Morrison Family Trust and McMartin Family Partnership signed in September 2012.  See Ex. 1.  Under the agreement, Morrison Family Trust leased 110 acres of farmland (the Farmland)[2] to McMartin Family Partnership for a term of five years, 2013 through 2018.  Id.  Debtor signed the lease as the general partner of, and on behalf of, McMartin Family Partnership.[3]  Id.  The agreement obligated McMartin Family Partnership to pay $22,000 annually by February 1 to Morrison Family Trust.  Id. McMartin Family Partnership agreed "not to assign or sublet this Lease or the premises so leased, or any part thereof without the written consent of [Morrison Family Trust]. [McMartin Family Partnership] shall have the right to sublet the premises for growing potatoes upon the written consent of [Morrison Family Trust]."  Id. at 3.

---

[2] The Farmland is located in the N½ NE ¼ and N½ S½ NE¼ of Section 9, Township 159N, Range 51 in Pembina County.  See Exs. 1, 2, 4.

[3] Although the names of entities under which Debtor conducted his farming business and the source of the checks to Morrison Family Trust changed over the years, Debtor always signed the leases and rent checks.  For example, McMartin Family Partnership became McM, Inc. in 2014.  Debtor conducted business on behalf of both entities.  According to Morrison, Debtor was also always the "point man" in Morrison Family Trust's dealings with the various McMartin entities over the years.

2

On February 2, 2017, Debtor paid Morrison Family Trust $22,000 for rent under this cash lease agreement.[4] Ex. 3. Debtor made this payment from his personal account even though McM, Inc. (formerly McMartin Family Partnership) was the lessee. Morrison accepted the check and assumed Debtor—or any entity in which Debtor held an interest—had the right to farm the land.

Within a week or two after Debtor remitted the 2017 rent check to Morrison Family Trust, Debtor informed Morrison he was establishing a new entity to sublease the Farmland and proposed transferring the lease to Elkhorn Farms, LLP.[5] Morrison agreed to the sublease as long as the terms were the same as those in the existing lease.[6] Morrison insisted that Debtor draft the new agreement with the same terms.

McM, Inc. filed a voluntary Chapter 7 bankruptcy petition on February 10, 2017.

On March 22, 2017, Morrison Family Trust formally leased the Farmland to Elkhorn Farms. Specifically, Morrison on behalf of Morrison Family Trust and Kenneth H. Johnson and Al R. Johnson on behalf of Elkhorn Farms executed a two-year (2017 and 2018

---

[4] The Trustee stipulated that $22,000 was the fair market rental value of the land.

[5] Elkhorn Farms was formed in early 2017, according to Kim Johnson, the office manager of Elkhorn Farms. Specifically, Kenny H. Johnson and Al R. Johnson signed a form registering Elkhorn Farms, LLP, as a North Dakota limited liability partnership on February 16, 2017, after discussing forming the entity for a few months. Ex. 5. Notations on the form indicate that the North Dakota Secretary of State received it on February 23, 2017 and again on March 31, 2017. Id. Elkhorn Farms, LLP also filed a Consent to Use Business Name on March 31, 2017. Id. Through this form, the vice president of another entity with a similar name, Elkhorn Ranch, Inc., consented to Elkhorn Farms, LLP's use of the similar name. Id. Johnson explained that the Secretary of State rejected the registration the first time Elkhorn Farms, LLC filed it, but it "went through" the second time (after Elkhorn Farms, LLC included the form demonstrating Elkhorn Ranch, Inc.'s consent to use the name). The Secretary of State filed the registration on April 7, 2017. Id.

[6] Morrison testified that he understood that the lease agreement allowed McMartin Family Partnership to sublet or assign the lease as long as both parties to the lease agreed to it.

3

farming seasons) cash lease agreement to rent the Farmland. Ex. 2. Aside from the modified term of the lease and the new lessee, the remainder of the provisions of the agreement are identical to those in the agreement between Morrison Family Trust and McMartin Family Partnership, including the $22,000 annual rate for the use of the Farmland. Ex. 2. Elkhorn Farms drafted the lease using the Morrison Family Trust/McMartin Family Partnership lease as a template.

On April 26, 2017, Elkhorn Farms paid Debtor $22,500. Ex. 4. The check Elkhorn Farms issued to Debtor notes it is for "Land Rent Reimbursement" in the memo line. The payment stub attached to the check lists the description of the Farmland, which matches the legal descriptions of the Farmland in the cash lease agreement between Morrison and McMartin Family Partnership and the cash lease agreement between Morrison and Elkhorn Farms. See Exs. 1, 2, 4.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 11, 2017.

### III.   CONCLUSIONS OF LAW

#### A.   11 U.S.C. § 548

Under the constructive fraud transfer provision of section 548 of the Bankruptcy Code, a trustee can avoid a debtor's transfers made within two years of the petition date if the debtor did not receive a reasonably equivalent value in exchange. 11 U.S.C. § 548(a)(1)(B). The trustee bears the burden of proof by a preponderance of the evidence. Doeling v. O'Neill (In re O'Neill), 550 B.R. 482, 507 (Bankr. D.N.D. 2016) (citations omitted). To succeed on his claim under section 548(a)(1)(B), the Trustee must show:

> (1) an interest of the debtor in property; (2) was voluntarily or involuntarily transferred; (3) within [two years] of filing bankruptcy; (4) where the debtor received less than reasonably equivalent value; and (5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof.

4

Id. at 507–08 (citing Sullivan v. Welsh (In re Lumbar), 457 B.R. 748, 753 (B.A.P. 8th Cir. 2011); Schnittjer v. Houston (In re Houston), 385 B.R. 268, 272 (Bankr. N.D. Iowa 2008)).

Morrison concedes that the Trustee met his burden of proving all the elements except the fourth. He asserts that the Trustee cannot show Debtor received less than reasonably equivalent value.

"Whether a transfer is made for reasonably equivalent value is a question of fact." In re O'Neill, 550 B.R. at 509 (citations omitted). In the Eighth Circuit, courts consider three factors in analyzing reasonably equivalent value: whether (1) value was given; (2) it was given in exchange for the transfer; and (3) what was transferred was reasonably equivalent to what was received." Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004) (citing Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.), 267 B.R. 602, 608 (B.A.P. 8th Cir. 2001)). "'There is no bright line rule used to determine when reasonably equivalent value is given.'" In re O'Neill, 550 B.R. at 510 (quoting Lindquist v. JNG Corp. (In re Lindell), 334 B.R. 249, 255 (Bankr. D. Minn. 2005)). Rather, courts consider the entire situation and base their analysis on the totality of circumstances. Jacoway v. Anderson (In re Ozark Rest. Equip. Co.), 850 F.2d 342, 345 (8th Cir. 1988); Sullivan v. Schultz (In re Schultz), 368 B.R. 832, 836 (Bankr. D. Minn. 2007) (citation omitted). "Ultimately, a 'determination of reasonably equivalent value is fundamentally one of common sense, measured against market reality.'" In re O'Neill, 550 B.R. at 511 (quoting Ahlgren v. Dailey (In re Schnoor), 510 B.R. 868 (Bankr. D. Minn. 2014)).

"The question of reasonably equivalent value is answered by determining whether the debtor received value that is substantially comparable to the worth of the transferred property or, phrased another way, whether the debtor received a fair exchange in the

5

marketplace for the goods transferred." Id. at 510 (footnotes and internal quotation marks omitted). "When determining whether the value transferred was reasonably equivalent to what was received, 'the important elements to consider are (1) fair market value and (2) whether there was an arm's length transaction.'" In re Schnoor, 510 B.R. at 874 (quoting In re Lindell, 334 B.R. at 249).

The Bankruptcy Code defines "value" as "property in satisfaction or securing of a present or antecedent debt of the debtor[.]" 11 U.S.C. § 548(d)(2)(A).

> By this very definition, any consideration going toward satisfying a debt must be toward a debt **of the debtor in bankruptcy**, to constitute "value" in itself. In re Richards & Conover Steel Co., 267 B.R. at 612 (applying statutory definition of "value" to analysis of "reasonably equivalent value" under 11 U.S.C. § 548(a)(1)(B)). If an indirect benefit to the debtor derived from the satisfaction of the debt of another is offered in defense as the "value," it must be "fairly concrete." In re Minn. Util. Contracting, Inc., 110 B.R. 414, 420 (D. Minn. 1990). The party claiming to have delivered such value must quantify it, as to the debtor. In re Southern Health Care of Ark., Inc., 309 B.R. 314, 319–320 (8th Cir. BAP 2004); In re Richards & Conover Steel Co., 267 B.R. at 614.

Stoebner v. Ritchie Capital Mgmt., L.L.C. (In re Polaroid Corp.), 472 B.R. 22, 67 (Bankr. D. Minn. 2012) (emphasis in original). "[A] transfer on behalf of a third party may produce a benefit that ultimately flows to the debtor, albeit indirectly. If the indirect benefit constitutes reasonably equivalent value to the debtor, a trustee cannot avoid the transfer as fraudulent." In re Richards & Conover Steel, Co., 267 B.R. at 613–14 (quotation omitted).

Morrison offers alternative arguments for his claim that Debtor received reasonably equivalent value for the $22,000 payment Debtor made to Morrison on behalf of McM. First, Morrison asserts that Debtor received a direct benefit in exchange for his payment because Debtor "wrote the rent check and was leasing the land in his own name since there was no prohibition on sub-leasing in the written contract." Doc. 31 at 1. Under this

6

theory, Morrison argues Debtor received reasonably equivalent value because he received the right to farm the land.

The evidence belies this assertion. The lease was not in Debtor's name, and Morrison presented no evidence of a sublease between Debtor and McM. Simply put, Debtor did not receive the use of the land upon his payment to Morrison. McM did. Although it is understandable that Morrison did not appreciate the legal distinctions between Debtor and the various McMartin entities, the distinctions matter. Debtor received no direct consideration in exchange for his $22,000.

Alternatively, Morrison argues that Elkhorn Farms farmed the land and reimbursed Debtor for the 2017 land rent payment, making Debtor and his bankruptcy estate whole. More specifically, Morrison claims that Debtor received reasonably equivalent value through the indirect benefit of the $22,500 rent reimbursement payment from Elkhorn Farms.

In response to this defense, the Trustee asserts that the determination of reasonable equivalence must be made as of the time of the transfer, and the transfer must be given in exchange for something Debtor received from Morrison—quid pro quo. He also claims that Morrison must show Debtor contemplated the direct (or indirect) benefit he ultimately received (reimbursement from Elkhorn Farms) at the time Debtor paid McM's $22,000 lease obligation to Morrison. In other words, the Trustee argues that the value Debtor received ($22,500) must have been in contemporaneous exchange for Debtor's ($22,000) payment to Morrison and must have arisen from the original bargain. He repeatedly characterized the connection between Debtor's payment of McM's lease obligation to Morrison and the payment to Debtor from Elkhorn Farms on the sublease as mere "happenstance." As support for this characterization, the Trustee emphasizes that

7

when Debtor wrote the check to Morrison Family Trust, Elkhorn Farms did not exist, and there was no agreement that Debtor would receive anything in return. The Trustee repeatedly insisted that Morrison must prove Debtor had a plan to bring reasonably equivalent value back to Debtor at the time of the transfer.

The Trustee's arguments fail for several reasons. First, the Trustee focuses his argument on Debtor's intent at the time of the payment to Morrison, and Debtor and Morrison's bargain at the time of this transfer, rather than considering the transfer and the rent reimbursement from the perspective of unsecured creditors. "In contrast to actual fraud, a claim for constructive fraud focuses on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." Angell v. Endcom, Inc. (In re Tanglewood Farms, Inc. of Elizabeth City), 487 B.R. 705, 710 (Bankr. E.D.N.C. 2013) (quotation omitted). In In re Richards & Conover Steel, Co., the Eighth Circuit Bankruptcy Appellate Panel articulated, "The issue of reasonably equivalent value has to be analyzed from the perspective, not of what the parties expected would happen (i.e., funds would be paid to unsecured creditors), but from the perspective of whether and when value was created and exchanged." 267 B.R. at 613; see also Rosen v. Moreno (In re Rood), 2011 WL 1742016, at *3 (Bankr. D. Md. Feb. 12, 2011) ("Moreover, it is irrelevant, in this context, whether TOUSA hoped, or even expected, that the transfer would serve the best interest of the company's subsidiaries. The relevant inquiry under Section 548 is whether the Conveying Subsidiaries actually received reasonably equivalent value, not whether TOUSA (or the Defendants) hoped or expected that they would receive value."); Kaler v. Able Debt Settlement, Inc. (In re Kendall), 440 B.R. 526 (B.A.P. 8th Cir. 2010) ("So long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, value has been

8

conferred."). Debtor's intent or his plan (or lack of a plan) to seek reimbursement from one of the business entities with which he was affiliated is not relevant to the reasonably equivalent value analysis because section 548(a)(1)(B) requires the application of an objective standard.[7] The Trustee's claim that Morrison must show Debtor contemplated the payment he ultimately received from Elkhorn Farms at the time he made McM's lease payment is rejected.

Next, the Trustee argues that the time between the February 2, 2017 transfer and the April 26, 2017 reimbursement is too far removed to satisfy the "in exchange for" requirement of the reasonably equivalent value analysis. In support of his argument that the transfer and the receipt of benefit must be contemporaneous, the Trustee cited a number of cases standing for the proposition that the determination of reasonable

---

[7] Most courts that have considered this issue find that an objective standard is applied to the reasonably equivalent value analysis under section 548(a)(1)(B). See Rodriguez v. Nelabovige (In re Kirst), 559 B.R. 757, 759 (Bankr. D. Colo. 2016) ("The Bankruptcy Code codifies the law of subjective and objective fraudulent transfers in 11 U.S.C. §§ 548 (a)(1)(A) and (a)(1)(B). The subjective standard is whether there was actual intent to hinder, delay or defraud a creditor and the objective standard is whether the debtor-transferor received a reasonably equivalent value in exchange for such transfer and whether the debtor-transferor was insolvent or rendered insolvent by the transfer."); Mercury Cos., Inc. v. FNF Sec. Acquisition, Inc. (In re Mercury Cos., Inc.), 2015 WL 5920163, at *8 (Bankr. D. Colo. Oct. 9, 2015) ("With respect to reasonably equivalent value, the District Court has instructed this Court to reconsider only the fair market value of the benefit received 'from the objective creditor's perspective, without regard to the subjective needs or perspectives of the debtor or transferee.'" (citation and footnote omitted)); Kirtley v. Stenzel (In re Rhein), 2013 WL 2477280, at *5 n.50 (Bankr. N.D. Okla. June 10, 2013) ("Reasonably equivalent value is the objective market value [of the asset acquired by the debtor] at the time of the transfer, looked at from the creditor perspective. [T]he central issue is whether the recovery the debtor's creditors could legitimately expect to realize from the asset received by the debtor is reasonably equivalent to the value of the asset transferred by the debtor." (quotations omitted)); Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.), 247 B.R. 51, 114 (Bankr. S.D.N.Y. 1999) ("The questions under §548(a)(1)(B) are objective: whether the debtor was insolvent, rendered insolvent, or possessed of unreasonably small capital; and whether it received less than reasonable equivalent value in exchange for the assets transferred. Whether the debtor was negligent or knowing is irrelevant to this analysis.").

9

equivalence must be made as of the time of the transfer. See Doc. 28 at 2–3. Many of these cases cite BFP v. Resolution Trust Corp., 511 U.S. 531 (1994). In BFP, a Chapter 11 debtor argued that the price received at a mortgage foreclosure sale was less than reasonably equivalent value for the property. The Supreme Court focused on property value at the time of the sale. As a result of the Court's decision in BFP, courts typically ignore post-transfer appreciation or depreciation in their analysis of value. See White v. Coyne, Schultz, Becker & Bauer, S.C. (In re Pawlak), 483 B.R. 169, 185 (Bankr. W.D. Wis. 2012) (citation omitted). Notably, the Supreme Court did not articulate any requirement that a reasonably equivalent benefit be received by a debtor at the time of the transfer as the Trustee argues.

In this case, there is no dispute regarding property value because both the transfer and the benefit (reimbursement) were in cash. There is no evidence that the value of money changed in the two months between the transfer to Morrison and the indirect benefit via land rent reimbursement Debtor received. Most of the cases the Trustee cites do not stand for the proposition that the exchange of transfer for benefit must take place on the same date or at the same time. This is particularly true in those cases in which the debtor received an indirect benefit for the transfer—as presented by the circumstances in this case. Accordingly, the Trustee's argument that the transfer and reimbursement are not sufficiently contemporaneous is rejected.

Finally, the Court is not persuaded by the Trustee's argument that there is no evidence showing Debtor transferred $22,000 in exchange for a benefit to Debtor. Specifically, the Trustee argues that Debtor's $22,000 payment to Morrison for McM's land rent obligation was not given in exchange for Elkhorn Farms' $22,500 payment to

10

Debtor. He asserts that the transfer and return benefit to Debtor were not the "quid pro quo" of the other, but rather, merely "happenstance."

To the extent the Trustee suggests that Debtor must receive a direct benefit from Morrison in exchange for the transfer of $22,000, this argument is rejected. Courts routinely find that an indirect benefit in exchange for a transfer may satisfy the reasonably equivalent value requirement. See, e.g., In re Richards & Conover Steel, Co., 267 B.R. at 612–14; In re Polaroid Corp., 472 B.R. at 67; Jordan v. Kroneberger (In re Jordan), 392 B.R. 428, 442 (Bankr. D. Idaho 2008) ("Beyond looking at what is exchanged in a *quid pro quo* transaction, it is important to examine the value of all benefits inuring to a debtor by virtue of the transaction in question, directly or indirectly.").

To the extent the Trustee claims that Debtor's $22,000 land rent payment to Morrison was not a transfer in exchange for the indirect $22,500 payment Debtor received from Elkhorn Farms for land rent reimbursement, the Court rejects this argument as well. In evaluating reasonably equivalent value, the Court finds it appropriate to consider all the evidence related to the transfer to Morrison and to compare this sum to the total benefit Debtor received either directly or indirectly in exchange for the transfer. See In re Richards & Conover Steel, Co., 267 B.R. at 612 ("[T]he court must examine 'all aspects of the transaction and carefully measure the value of all benefits and burdens to the debtor, direct or indirect.'" (citation omitted)).

Based on the evidence received at trial, Debtor and various entities in which he owned an interest leased land from Morrison. Debtor signed a lease of the Farmland on behalf of McMartin Family Partnership, later known as McM. On February 2, 2017, Debtor paid $22,000 to Morrison to satisfy McM's lease obligation. A week or two after Debtor transferred $22,000 to Morrison, Debtor informed Morrison he was establishing a new

11

entity to sublease the land Morrison leased to McM. Debtor proposed transferring the lease to Elkhorn Farms. Morrison agreed. Although the founders of Elkhorn Farms did not complete the incorporation registration with the North Dakota Secretary of State until April, they began the incorporation process in early 2017 (not later than February 16, 2017). On March 22, 2017, Morrison and Elkhorn Farms signed a cash rent lease agreement relating to the Farmland—the same real property as the lease Debtor signed on behalf of McMartin Family Partnership. In other words, Debtor made a cash lease payment in February 2017 for the same land Elkhorn Farms formally leased in March 2017. On April 26, 2017, Elkhorn Farms issued a check to Debtor for $22,500. The memo line provides that the payment is for Land Rent Reimbursement. The payment stub attached to the check includes a land description matching the land description of the Farmland Morrison leased to McMartin Family Partnership and Elkhorn Farms. After considering all these facts, the Court is satisfied that Debtor received $22,500 in exchange for the $22,000 land rent payment Debtor paid to Morrison on behalf of McM.

Additionally, the Trustee argues that the $22,000 transfer was not in exchange for the $22,500 rent reimbursement from Elkhorn Farms because they were not quid pro quo of the other, and Eighth Circuit law requires a quid pro quo exchange. The Eighth Circuit Bankruptcy Appellate Panel in In re Richards & Conover Steel, Co. suggested that an indirect benefit may be the quid pro quo of a transfer. It found:

> A transfer is in exchange for value if one is the quid pro quo of the other. 2 David G. Epstein, Bankruptcy § 6–49 at p. 33 (citing In re Gailey, Inc., 119 B.R. 504, 513 (Bankr. W.D. Pa. 1990)). Once it is determined that the Debtor received the services of GHG then it is clear they were in exchange for the payment of GHG's fees, directly or indirectly, as the quid pro quo, one for the other.

267 B.R. at 612 (citation omitted). Whether an indirect benefit can be the quid pro quo of a transfer as suggested by In re Richards & Conover Steel, Co., a quid pro quo exchange

12

is not required,[8] or an indirect benefit is a permissible exception to the quid pro quo requirement, the Court concludes that a subsequent indirect benefit in exchange for a transfer may constitute reasonably equivalent value.

In this case, Morrison offered evidence that Debtor received an indirect benefit—$22,500 of concrete indirect economic value—that exceeded the value that Debtor transferred ($22,000). See Unencumbered Assets Trust v. Biomar Tech., Inc. (In re Nat'l Century Fin. Enters., Inc.), 341 B.R. 198, 214 (Bankr. S.D. Ohio 2006) (stating that where a transfer involves third parties, the measure of value of benefits received is focused on the economic benefit flowing to the debtor as a result of the transfer); Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP), 408 B.R. 318, 341

---

[8] Many courts in other circuits apply a two-step reasonable equivalence analysis without a quid pro quo requirement. See, e.g., FBI Wind Down Inc. v. Innovative Delivery Sys., Inc. (In re FBI Wind Down, Inc.), 581 B.R. 387, 415 (Bankr. D. Del. 2018) (stating that the first step is whether it was legitimate and reasonable to expect some value accruing to the debtor based on the circumstances that existed at the time of the transfer; the second step is a fact-driven assessment of whether the debtor "got roughly the value it gave"); Lanik v. Young (In re Young), 2018 WL 485957, at *3 (Bankr. M.D.N.C. Jan. 17, 2018) ("In the absence of a statutory definition, the courts have divided the inquiry regarding reasonably equivalent value into a two-step process in which it is first determined whether the debtor received any value in the transaction. Secondly, if some value was received, it is then determined whether such value was 'reasonably equivalent' to the property transferred by the debtor or the obligation incurred by the debtor."); Weisfelner v. Blavatnik (In re Lyondell Chem. Co.), 567 B.R. 55, 113-114 (Bankr. S.D.N.Y. 2017) ("In determining whether a debtor has received reasonably equivalent value in a transfer, courts undertake a two-step inquiry: first, a court must determine 'whether the debtor received any value at all in exchange for the transfer; i.e. any realizable commercial value as a result of the transaction,' and second, a court must determine 'whether that value was in fact reasonably equivalent.'"); Brandt v. Charter Airlines, LLC (In re Equip. Acquisition Res., Inc.), 511 B.R. 527, 534 (Bankr. N.D. Ill. 2014) (overruled on other grounds) (stating that the "two-step process" is to "first determine whether the debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up"); Barbacci v. Mikstay (In re Wallace), 2014 WL 1304607, at *2 (Bankr. N.D. Ohio Mar. 31, 2014) (outlining that the two-step process involves determining whether the debtor received any value and whether the consideration the debtor received for the transfer was reasonable).

13

(Bankr. N.D. Cal. 2009) ("Indirect benefits, those which come from one other than the recipient of the payments, along with direct benefits, may constitute value if sufficiently concrete and identifiable."). Morrison also established that Debtor received $22,500 in exchange/as reimbursement for the $22,000 rent payment Debtor made on behalf of McM. Accordingly, the Court finds that Debtor received reasonably equivalent value for the transfer to Morrison. The bankruptcy estate suffered no loss as a result of Debtor's transfer to Morrison.[9] The Trustee's cause of action under section 548(a)(1)(B) seeking to avoid this transfer is dismissed.

### B.     11 U.S.C. § 544 and N.D.C.C. § 13-02.1-04(1)(b)

"Section 544(b) empowers a trustee to step into the shoes of an actual unsecured creditor and utilize whatever state or nonbankruptcy federal law remedies that particular creditor may have." Kelly v. Opportunity Fin., LLC (In re Petters Grp. Worldwide, LLC), 561 B.R. 738 (Bankr. D. Minn. 2016) (citation omitted). Under N.D.C.C. § 13-02.1-04(b)(1), a transfer may be avoided if a debtor made it:

> [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

---

[9] At the heart of the reasonably equivalent value analysis in this case lies the question: Did the bankruptcy estate suffer a loss as a result of Debtor's transfer? See In re Rood, 2011 WL 1742016, at *3 ("the touchstone of a cognizable indirect benefit is whether the debtor's net worth has been preserved and the interests of the creditors will not have been injured by the transfer") (internal quotations and citations omitted); In re Jordan, 392 B.R. 428, 441 ("Whether a debtor received a reasonably equivalent value is analyzed from the point of view of the debtor's creditors, because the function of this element is to allow avoidance of only those transfers that result in a diminution of a debtor's prepetition assets."). Considering all the circumstances of this case, Debtor's net worth was preserved by the transactions, and creditors were not harmed.

14

N.D.C.C. § 13-02.1-04(b)(1). A claim for relief with respect to a transfer under section 13-02.1-04 must be brought within four years after the transfer was made. N.D.C.C. § 13-02.1-09(2). "The main distinction between the provisions of the bankruptcy code and [] state law fraudulent transfer statutes [under the Uniform Fraudulent Transfer Act] is the lookback period." Kaler v. Wong (In re Wong), 2009 WL 4669251, at *4 (D.N.D. Nov. 25, 2009). The lookback period is four years under state law and two years under the Bankruptcy Code. See N.D.C.C. § 13-02.1-09; 11 U.S.C. § 548.

The Trustee conceded at trial that the longer lookback period is the only difference between the North Dakota fraudulent transfer law and 11 U.S.C. § 548. The Court concludes that Trustee's failure to show a lack of reasonably equivalent value under bankruptcy law is also a failure under North Dakota law. For this reason, his claim under 11 U.S.C. § 544 and N.D.C.C. § 13-02.1-04(1)(b) also fails. This cause of action is dismissed.

The Court considered all other arguments and deems them to be without merit or unnecessary to address.

### IV.    CONCLUSION

For the reasons stated above, the Court finds in favor of Defendant and against the Trustee. The Trustee's claims and causes of action are dismissed with prejudice.

Dated: March 21, 2019.

*/s/ Shon Hastings*

SHON HASTINGS, JUDGE
UNITED STATES BANKRUPTCY COURT

15